## GRIFFITH vs. FOLLETT.

In an action to recover damages for a neglect of duty by the defendant as canal commissioner, the complaint alleged that the defendant *being canal commissioner*, it was his duty to repair the banks of the canal at the place where the injury was sustained. *Held* that this allegation of the defendant's official character was made for the purpose of charging him with the duty for a neglect of which the action was brought; and that if any neglect of official duty which rendered him liable to an action, in any form, was alleged, the action was properly brought against him in his private character; and that the several causes of action were properly united.

*Held also*, that it was no objection to the complaint, that it did not contain any averment that the defendant had funds sufficient to repair the banks of the ' canal.

The question, as to the liability of a canal commissioner, for a neglect of duty, depends, in each case, upon the *character* of the duty which the statute has imposed upon him. If it is *imperative*, and specific, the commissioner is responsible to any person who has sustained an injury in consequence of his neglect of duty.

But if the duty is to be discharged according to the *discretion* and judgment of the commissioner, he cannot be held responsible to a party who has sustained an injury either by the manner in which he discharges it, or by a neglect to do any particular act falling within the general scope of his duties.

A canal commissioner is to examine the works committed to his charge, and from such examination he is to ascertain and determine, that is, *decide* as to the necessity for any *particular* repair, and act accordingly.

It is not his duty to make repairs when, or as, he may be requested or advised by others. But as to the necessity of such repairs, their nature and extent, and the time when they are to be made, he is to be guided by his own judgment. And his judgment is conclusive, upon the question, and cannot be called in question collaterally, in an action brought by a party who has sustained an injury by the commissioner's neglect to act, in any particular case.

There is, however, a class of cases in relation to which the duty of the commissioner is, *in its nature*, absolute and certain. Thus, when the navigation of the canal is *interrupted* or *impeded* by any obstruction of the channel, or by the destruction of any bank or structure, the necessity for immediate repairs is apparent, and the duty of the commissioner to make them is imperative.

He has no discretion to exercise, in such a case, as to the necessity of repairing, but is bound to make the repairs without delay; and for a neglect to make them, after notice of the facts showing their necessity, the commissioner is liable to any party injured by the neglect.

APPEAL from an order made at a special term, sustaining a demurrer to the first and second counts of the complaint, and overruling the demurrer as to the other counts.

Griffith *v.* Follett.

The first count of the complaint alleged that at the several times therein mentioned, the defendant was a canal commissioner of the state of New York, and had section No. 14 of the Erie canal under his charge ; and that as such commissioner, it was his duty to keep the said section in such repair that canal boats might navigate the same safely. That for a long time before the 18th day of September, 1853, the defendant *negligently and carelessly, and not regarding his duty in that behalf,* suffered the banks of the canal upon the said section to become weak and dangerous so " that there was great danger that a break would occur therein, at the place where the break mentioned in the first count did occur, and so that it was dangerous and unsafe for canal boats to navigate that part of the canal, and that they could not navigate the same without danger of loss and damage to said boats and their cargoes ; *of all which the defendant had notice and which he well knew.* That the defendant negligently and carelessly permitted the said bank to remain weak and dangerous and without repair, until the said 18th day of September, when a break occurred in said bank by reason of such negligence. That when the said break occurred, a canal boat belonging to the plaintiff was navigating that part of the canal, laden with a cargo of wheat, and that by means of said break said canal boat was sunk and broken and the boat and its cargo lost to the plaintiff. The second count contained the same averments as the first, and the additional averments that at the several times stated in the first count the defendant as commissioner, had sufficient funds in his hands to repair the bank in question, and that he negligently and carelessly suffered the bank to become and remain weak and dangerous " without expending or applying any of the money aforesaid in or about its repair, until after the break in question occurred." The third count alleged the ownership of a canal boat by the plaintiff, that he intended to carry, in the same, on said canal, a cargo of wheat, and that the defendant destroyed and converted the boat to his own use and thereby hindered the plaintiff from carrying the said cargo, whereby the plaintiff lost said boat and the freight that he might have earn-

ed on said cargo. The fourth count was in trover, for the conversion of a canal boat, by the defendant.

To the first and second counts the defendant demurred, first on the ground that they did not set forth a cause of action ; and second, that there was a defect of parties in that the defendant should have been sued *as canal commissioner,* and not in his individual capacity. There was also a demurrer to the whole complaint, on the ground that several causes of action had been improperly joined. The demurrer to the first and second counts, on the ground that they contained no cause of action, was sustained. The demurrer for defect of parties and for non-joinder was overruled, and both parties appealed.

*Geo. B. Hibbard,* for the plaintiff. I. The general rules as to the liability of officers are these : (1.) A public officer who is by law required to act in certain cases according to his judgment or opinion, sworn to discharge his duties, and subject to penalties for neglect, is not liable to a party for an omission arising from neglect or want of skill, if acting *bona fide.* (*Bac. Abr. art. Office and Officers, O, and cases cited.*) (2.) An officer intrusted by the common or statute law is liable to an action for negligence in the performance of his trust or duty, or for fraud or neglect in the execution of his office. (*Bacon's Abr. art. Office and Officers, O, and cases cited.*)

II. The first ground of demurrer is not well taken. (*See* 1 *R. S.* 220, § 17, [18.) "Whenever in the opinion of the canal commissioners it shall become necessary or expedient to make any *extraordinary repairs or improvements* on any completed canal, such as the opening of *new* feeders, or the construction of *additional* locks, dams, *embankments,* tunnels or aqueducts," it shall be their duty to make out plans, submit them to the board, and when the board or the legislature shall order them, &c. to carry them out. (*See* 1 *R. S.* 221, § 23, [§ 25;] §§ 99, 100, *p.* 236.) "Whenever the navigation of any of the canals shall be interrupted or endangered, it shall be the duty of the commissioners, without delay, to repair the injury causing or threatening such interruption, and for that purpose they shall

Griffith *v.* Follett.

have power to enter upon and use any contiguous lands, and to procure therefrom all such materials as in their judgment may be necessary or proper to be used in making such repairs." (*See* 1 *R. S.* 222, § 29, [33].)   The previous section having said that the canal board " shall from time to time assign to each acting commissioner in special charge the line or portion of the line of one or more of the canals," the section referred to says, " it shall be the duty of each acting commissioner, 1. To examine frequently and carefully into the state of the canals and works committed to his charge.  2. To direct and cause to be made such ordinary repairs as he shall perceive to be necessary. 3. To superintend and cause to be made such extraordinary repairs or improvements as shall be ordered.   4. To make by himself, or a superintendent of repairs, all necessary contracts for the supply of materials and the performance of labor."   The repairs which were omitted to be made were " ordinary repairs." (*See Laws of* 1834, *p.* 787.)   But whether technically ordinary repairs or not, yet in the precise case stated in the complaint, the defendant is liable for the infraction of duty prescribed by the second section above quoted.   (*See Adsit* v. *Brady*, 4 *Hill*, 630, *and cases and statutes referred to.   Wilson* v. *The Mayor of New York*, 1 *Denio*, 595.)

III. The second ground of demurrer is not well taken.  (*See authorities &c. under last point.*)

IV. The third ground of demurrer is not well taken.   The law will  presume that the plaintiff was rightfully in the canal, till the contrary is shown.   The complaint alleges that the plaintiff was not in fault.   He is alleged to have been in business lawful to be done, and so recognized by many general laws. It would be the statement of a conclusion of law and therefore improper.   (5 *Sand.* 507.)

V. The fourth ground of demurrer is not well taken.   (*See authorities, &c. under point* 1.)   The authorities relied upon for showing that it is necessary to allege funds in the hands of the defendant are cases where the officers did not have power to raise funds.   In this case the defendant not only had means supplied by law, but ample power to complete all repairs.   (*See*

*Adsit* v. *Brady*, 4 *Hill*, 630, *and cases and statutes refer-red to.*)

VI. The first, second, third and fourth causes of demurrer to the second count are badly taken, for the reasons specified under point 2.   It is also made a cause of demurrer, that "there is a defect of parties," in this, that the defendant is sued as an "individual," and not as an officer.   This is bad, for the reason that he is not sued as an officer, or as a *quasi corporation* with an official fund to resort to.   He is sued as an individual, and his description as an officer has nothing to do with his character as defendant.   His holding the office and neglect of its duties are the very elements of the action, and these are stated.   There is no such "defect of parties," or any other good cause of demurrer, in this particular.

VII. The last alleged cause of demurrer is not well taken. (1.) The matters stated in the different counts are "evidently" "transactions connected with the same subject of action."   (*See Code,* § 167, *sub.* 1.)   (2.) The causes of action are for injuries "with or without force to property."   (*See Code,* § 167, *sub.* 1 ; *Rodgers* v. *Rodgers,* 11 *Barb.* 595.)

*W. G. Bryan,* for the defendant.   I. The first and second counts are identical, except that the first omits to state that the defendant had funds sufficient to make the repairs alleged to have been necessary, &c.   We will first discuss the question whether, (conceding defendant to have had funds, and the boat to have been lawfully navigating the canal,) there is any legal liability as against the defendant to make good the plaintiff's loss. The action is novel and without precedent.   Canal breaks and detentions are disasters constantly occurring.   It is believed the commissioners have never before been prosecuted as personally liable therefor.   The novelty of a particular action or defense when the facts on which it is founded are of common occurrence, is a strong argument that it cannot be upheld.   (*Costigan* v. *The Mohawk and Hudson R. R. Co.,* 2 *Denio,* 609.)   "This fact [that no similar action had ever been brought] affords a very strong presumption that no such action will lie."   (*Bart-*

lett v. *Crozier*, 17 *John*. 451.) Before a party can bring an action for official negligence he must show a legal duty peculiar to himself and a particular obligation to himself. (*Bank of Rome* v. *Mott*, 17 *Wend*. 555.) No particular right of the defendant has been violated. There must be a particular right, as well as a particular injury. It pertains to the public only to avenge the injury. (*Butler* v. *Kent*, 19 *John*. 223. *Spear* v. *Cummings*, 23 *Pick*. 226.) The canals are not public highways, and boats can only navigate them by special permission, and on compliance with statute regulations. (1 *R. S.* 3d ed. p. 271, §§ 156, 162. *Hart* v. *The Mayor of Albany*, 9 *Wend*. 571.) Canal breaks, slides, &c. are perils of navigation against which neither the state nor its officers are *insurers*. The forwarder takes the canal as it is, subject to all accidents. His policy of insurance is protection against dangers of inland navigation. If this action will lie, then the least error of judgment or inattention would subject the canal commissioner to responsibilities so enormous and dangerous that no rational man would venture to accept such a trust. If liable for a mere *omission*, then any evidence tending to show knowledge of the necessity of repairs, with funds &c., would expose the commissioner to heavy verdicts.

II. Necessity for repairs involves the matter of *discretion*, a *quasi* judicial act, and for omission to direct repairs no action will lie, unless it be willful or malicious. He is made a judge of the *necessity* for repairs, &c., and his action is therefore not purely ministerial. By implication this doctrine is sanctioned in *Adsit* v. *Brady*, (4 *Hill*, 632,) which is the case on which the plaintiff relies. Bronson, J., says : " It is said the defendant has a discretion as to what repairs were needed, and consequently that his neglect should have been charged to be willful and malicious. (8 *Wend*. 462.) But clearly he had no discretion to leave this dangerous obstruction in the canal." All that case decides is that the neglect of a superintendent of repairs to remove a conceded, palpable obstruction was *willful*. There is an obvious distinction between neglecting *to repair* to an extent adequate to prevent injury, and a refusal to remove a

dangerous obstruction actually existing. The one is a present necessity, the other a prospective or possible necessity. Besides, by 1 *R. S. p.* 277, § 210, it is made the special duty of the commissioner, superintendent &c., to seize any floating or sunken thing which may be found in a canal. The words " perceive to be necessary" are the same in legal significance as the words " shall deem" and " shall in their judgment be necessary," as used in 1 *R. S. p.* 248, § 17, or " shall be deemed necessary," in § 21, or " as in their judgment may be necessary or proper," as used in § 25. There is no real parallel between the duty and liability of commissioners of highways and that of canal commissioners. The first have but a few miles of common highway to supervise, in their own neighborhood, and their duties in reference to them are of the plainest nature. The second have a territory so large that it can very seldom be under their own eye, and many of their duties require the aid of experts in engineering, hydraulics, &c. The proper height and strength of banks, &c. call for the exercise of skill and judgment. Their duties off the canal as members of the canal and contracting boards, and board of canal commissioners, are most onerous. See art. 2, general powers and duties of the canal commissioners, and art, 4, of the canal board, their powers and duties." But no private action will lie against even an overseer or commissioner of highways for neglect to keep the public bridges in repair. (*Bartlett* v. *Crosier, above cited.*) Nor would it, at common law. (*Mower* v. *Leicester,* 9 *Mass.* 247, *and* 23 *Pick.* 226, *above cited.*) It is believed that no precedent can be found for any action against a public officer at all resembling this, unless the omission complained of is averred to be *willful* or *malicious.* There is no such allegation in the two first counts, and therefore those counts are bad. Mere negligence, however gross, can never be equivalent to malice. (*Morse* v. *The Auburn and Syracuse R. R. Co.,* 10 *Barb.* 621.) It is submitted that the statute would have declared the extraordinary liability contended for by the plaintiff if it was to exist; but the statute affixes no penalty and creates no action.

III. If any state officer is personally liable for the injury

Griffith *v.* Follett.

sustained by the plaintiff, it is the superintendent of repairs, and not the canal commissioner ; the special and particular duty of repairing devolves primarily upon the superintendent. " It is the duty of each superintendent to *keep* in repair such section as shall be committed to his charge, to make all necessary contracts for that purpose," &c. (1 *R. S. 3d ed. p.* 269, § 145.) He is under the direction of the canal commissioners, " that is, the *general* direction ; not in every act which he does specifically, nor need he wait to hear from the commissioners before stopping a breach." (*Shepherd* v. *Lincoln,* 17 *Wend.* 250. *M'Fadden* v. *Kingsbury,* 11 *id.* 667.) The superintendent is not a deputy of the commissioners, and before he can justify an apparent neglect of duty, he must show that the omission resulted from obedience to orders. It will not be presumed that they gave an illegal command. (4 *Hill,* 633.) The two cases relied on by the plaintiff to sustain this action were against a *superintendent of repairs.* The 1st, in 17th Wendell, for *misfeasance* in not avoiding negligence in the repairs he was prosecuting. He had entered upon his work and the injury arose from his mismanagement—from positive acts of his servants which the court held him accountable for. The 2d, in 4th Hill, 630, for not removing what the court termed a " dangerous obstruction," " *a nuisance.*" The plaintiff evidently feels the force of this reasoning, for he brought a precisely similar, a twin action, for the same injury, against the superintendent of repairs, and it is now pending.

IV. The plaintiff should have averred in terms that the repairs needed were *ordinary* repairs. If they were *extraordinary* they must be ordered by the canal board. (2 *R. S. 3d ed. p.* 248, § 18; *p.* 251, *sub.* 3, § 3.) A new or additional embankment might be required, and that it was not, appears (if at all) only by inference.

V. It does not appear that the plaintiff's boat was lawfully navigating the canal. If not, the defendant owed no duty to it. Every boat must first obtain certificate of registry, &c. (1 *R. S.* 271, § 156.) No boat shall be cleared without such certificate. (§§ 162, 165.) The allegation that the injury happened without

---
· Griffith *v.* Follett.
---

the plaintiff's fault, &c. is not equivalent to the averment omitted. He should declare himself to be *rightfully* there.

VI. The first count is bad because it omits to aver that the defendant had in his hands or under his control money or funds wherewith to make the repairs. (*Bartlett* v. *Crosier*, 17 *John.* 439.) It is no answer to this objection that the defendant had power to make contracts for materials and labor. He can have in the whole but $10,000 on hand at any one time, (§ 44,) to meet the numerous and heavy demands upon him. It should be averred as in the 2d count, that he had sufficient moneys or available means unexpended, at the very time, to meet the enormous expenses attending the prevention or reparation of canal breaks. That part of the decision of the learned justice at special term which held that neither the 1st or 2d counts "stated facts sufficient to constitute a cause of action," was right and should be affirmed.

VII. The defendant should have been sued in his name of office and not as an individual. That is the ordinary form of proceeding against officers for neglects of strictly official duty. There is therefore a defect of parties in the 1st and 2d counts. For willful trespass he could be sued as an individual, but not for a mere omission to perform purely official acts.

VIII. If the allegations in the first two counts as against the defendant as canal commissioner are to be taken as applying to *all* the counts, then the 3d and 4th are bad, inasmuch as they are drawn against the defendant as an individual, and not as an officer. If not to be so taken, they are bad as being improperly joined with the 3d and 4th counts. The 3d and 4th are in trespass for acts necessarily and *per se* willful; the 1st and 2d can only be sustained on the ground that they are in legal effect the same as if the defendant were proceeded against in his name of office in the summons and complaint. If so, how can they properly be joined and tried with the naked trespass alleged in the 3d and 4th? Such a construction would lead to great embarrassment and confusion at the circuit, and cannot be within the spirit and intent of section 167 of the code.

Griffith *v.* Follett.

*By the Court,* GREENE, J. The causes of action disclosed by the first and second counts, if any, are not against the defendant in his official character. It is alleged that *being canal commissioner* it was his duty to repair the bank in question. This allegation of his official character is made for the purpose of charging him with the duty for a neglect of which the action is brought, and if any neglect of official duty which renders him liable to an action in any form, is alleged, the action is properly brought against him in his private character. I think the several causes of action are properly united, and that the demurrer, so far as it is founded on the alleged defect of parties and misjoinder of counts, was correctly overruled.

The important question in this case is, whether a cause of action is alleged in either of the first two counts. The case of *Adsit* v. *Brady,* (4 *Hill,* 630,) is a decisive authority against the objection to the first count that it contains no averment that the defendant had funds sufficient to repair the bank in question. With the exception of this unnecessary averment, which the second count contains, the two counts are identical in substance, and may be examined together.

The general powers and duties of canal commissioners are prescribed by article second of title nine of chapter nine, part first of the revised statutes. (2 *R. S.* 219.) The 9th section provides that " the general care and superintendence of the canals shall continue to be vested in the board of canal commissioners ; so many of whom (not less than two nor more than three,) as may be designated by the board, shall be acting commissioners." The 23d section provides that " whenever the navigation of any of the canals shall be *interrupted or endangered,* it shall be the duty of the commissioners, without delay, to repair the injury *causing* or *threatening* such interruption." The 28th section provides that " the board shall from time to time assign to each acting commissioner, in special charge, the line or portion of the line, of one or more of the canals." The 29th section provides that " it shall be the duty of each acting commissioner, 1st, to examine frequently and carefully into the state of the canals and works committed to his charge ; 2d, to

direct and cause to be made such ordinary repairs *as he shall perceive to be necessary.*" These are the provisions touching the duties of canal commissioners in relation to repairs, and upon which the plaintiff relies to sustain his action. The question as to the liability of a commissioner, for a neglect of duty, must depend in each case upon the *character* of the duty which the statute has imposed upon him. If it is imperative and specific, the delinquent commissioner is responsible to any person who has sustained an injury in consequence of his neglect of duty. (*Adsit* v. *Brady, above cited.*)

But if the duty is to be discharged according to the discretion and judgment of the commissioner, he cannot be held responsible to a party who has sustained an injury either by the manner in which he discharges it, or by a neglect to do any particular act falling within the general scope of his duties. It is contended by the plaintiff that all of the duties imposed upon the commissioners by the sections above cited are imperative and absolute; that by the provisions of the 23d section their duty to repair the canals is the same when there is *danger* of an interruption to navigation, as when there is an *existing* interruption. This proposition is true in its general application to these two classes of repairs. When the necessity for repairs in either case, is shown to the commissioner, it is his duty "without delay" to make them. But when the navigation is in no way interrupted or impeded, how is he to know that it is *endangered*, or that such interruption is *threatened?* I think the answer is equally apparent from the nature of the duty and the language of the statute which prescribes it. He is to examine the works committed to his charge, and from such examination he is to ascertain and determine, or in other words *decide* as to the necessity for any *particular* repair, and act accordingly. It is not his duty to make repairs when or as he may be requested or advised by others. As to the necessity of such repairs, their nature and extent and the time when they are to be made, he is to be guided by his own judgment, not by the advice or importunity of officious and interested individuals. His judgment in such matters is conclusive upon the question, and cannot be

Griffith *v.* Follett.

called in question collaterally in an action brought by a party who has sustained an injury by the commissioner's neglect to act in any particular case.

There is another class of cases, in relation to which the duty of the commissioner is, *in its nature,* absolute and certain. When the navigation of the canal is interrupted or impeded by any obstruction of the channel, or by the destruction of any bank or structure, the necessity for immediate repairs is apparent, and the duty of the commissioner to make them is imperative. He has no discretion to exercise, in such a case, as to the necessity of repairing, but is bound to make the repair without delay. But as to the extent of the repair and the manner in which it shall be made, he has the same discretion in such a case as in the cases first mentioned, subject, however, to the condition that the repair shall be sufficient to restore the canal to a navigable state. For a neglect to make such repairs after notice of the facts showing their necessity, the commissioner would be liable to any party injured by the neglect. This limitation of the commissioner's liability necessarily results from the nature of his duty. To this extent he would be liable on common law principles, by reason of the general duty imposed upon him by the statute to make all needful repairs. This rule is consistent with the character of his duty. It protects him in the independent exercise of his judgment, by absolving him from responsibility for errors, and holds him responsible only for a neglect of clear and imperative duty.

This view of the duties of the commissioners is in my opinion, sustained and clearly indicated by the provisions of the statute. Section 29 provides that the commissioner shall examine, frequently and carefully, into the state of the canals and works committed to his charge, and direct and cause to be made such ordinary repairs as *he shall perceive to be necessary.* This is equivalent to saying that he shall make such repairs as he shall deem or judge to be necessary. But this general language, like that of the 23d section, must receive a construction adapted to the subject matter to which it relates. We have seen that the necessity of certain repairs is, and must always

be a mere matter of opinion, and that such necessity must be determined by the judgment of the commissioner, to which the statute has confided it. On the other hand, the necessity of certain other repairs is clear and palpable. In regard to them the commissioner's duty is equally clear and imperative, and for its neglect he has no excuse.

These propositions are sustained and illustrated by the following cases. *Adsit* v. *Brady*, was an action brought against a superintendent of repairs for neglecting to remove a canal boat which had been sunk in the canal, against which the plaintiff's boat ran and was sunk. The declaration alleged that the sunken boat *obstructed* and rendered the navigation of the canal dangerous, and that the defendant knew it and neglected to remove the obstruction. In that case it was said that the defendant had a discretion as to what repairs were needed. But the court held that he had no discretion in the matter; that the boat being an *obstruction*, and the necessity of its removal apparent beyond all dispute, he was bound to remove it without delay. The case of *The Mayor &c. of New York* v. *Furze*, (3 *Hill*, 612,) was an action brought against the city of New York for neglecting to keep certain culverts and sewers in repair, by reason of which the plaintiff's premises were overflowed. By the charter of the defendants it was provided that it should be lawful for the corporation to cause common sewers, drains and vaults to be made in any part of the city. The court held the defendants liable. Nelson, C. J., in delivering the opinion, laid down the proposition in general terms that, although the terms of the statute were permissive only, as it was one of public concern, it was imperative and peremptory upon the corporation ; and that when the public interest called for the execution of the power thus conferred, the defendants were not at liberty arbitrarily to withhold it. But independent of this principle, the learned chief justice held that after the corporation had exercised the power, and constructed sewers, they were bound to keep them in repair, and that for a neglect to repair any known defects in them, the corporation was liable to any party injured thereby. The case of *Wilson* v. *The Mayor*

Griffith *v.* Follett.

*&c. of New York,* (1 *Denio,* 595,) was an action brought against the defendants for carelessly raising and grading a street opposite the plaintiff's lot, so as to obstruct the flow of water from her premises and to turn it on to them, and for *omitting* to make any sewer or drain to carry the water flowing from the street, from the plaintiff's premises. The court held that as the corporation had power to grade and construct the street, and all the proceedings for that purpose were regular, the plaintiff could maintain no action for any injury sustained by her in consequence of the *manner* in which the street had been constructed. It was also held that the action would not lie for the defendants' neglect to construct a sewer, although it was alleged to be *necessary* in that place. Beardsley, J., in delivering the opinion of the court, concurs with Nelson, chief justice, in the opinion expressed by him in *The Mayor of New York* v. *Furze,* that the provision of the statute *authorizing* the corporation to construct drains and sewers, was in its nature plainly imperative. The learned justice says: "it is equivalent to an express enactment that *it shall be the duty of the mayor, aldermen, &c., to make all needful sewers and drains in said city.* The statute imposes not only a moral but a legal duty to that extent, for a violation of which the guilty individuals may be indicted and punished. But so far as a civil remedy is concerned, it is otherwise. To that extent, the decision of those whose duty it is to pass upon the question is *absolutely conclusive.* They may err in holding that the work ought not to be made, or the decision may be the result of culpable neglect or corruption ; still the law has authorized them to determine the question, and it will not permit their decision to be overhauled in a civil action."

I think the distinction between the cases cited, where the defendants have been held liable, and the case under consideration, is clear. In one of those cases, the navigation of the canal was impeded and endangered by an obstruction visible and apparent to all ; in the other the sewers which the defendant was bound to keep in repair were obstructed and filled up so that they

would not carry off the water from the street. In this case, also, the necessity for the repair was apparent and the duty was clear. · But in the case at bar the facts are different. No obstruction or impediment to the navigation of the canal is averred. It is alleged that the bank was weak and dangerous; that there was great danger that a break *would occur*, and that in consequence of the weakness of the bank and danger of a break, the navigation was dangerous; and that the defendant had notice of these facts. The substance of this averment is that the defendant knew the condition of this bank; that it was *in fact* so weak that there was danger that it would break; and that the defendant neglected to repair it. All this may be true, and still the defendant may be guiltless of any neglect of duty in the matter. The sufficiency of this bank and of all the other parts of the canal under the defendant's charge, the necessity of repairs in all cases of this kind, and the extent of the repairs required by the necessities of each particular case, were all matters which the law had committed to his discretion, and the question as to his duty in such cases, is one which, from its nature, must necessarily be determined by his judgment. For aught that appears, he had examined this bank and upon such examination concluded that no repairs were necessary. The fact that a breach subsequently occurred, shows that he was mistaken as to the sufficiency of the bank, but it convicts him of no neglect of duty. · The allegation that the defendant negligently and carelessly and in disregard of his duty, suffered the bank to become and remain weak and dangerous, does not help the case. It does not change the fact that the duty to repair this bank depended upon the result of the exercise of the defendant's judgment. He may have judged unwisely, even *carelessly*, but for the purposes of a civil action, his judgment is none the less conclusive. When the law confides a discretion to its officers it will never allow their acts, done in good faith, within the limits of that discretion, to be questioned. They may be impeached and indicted for corruption, and punished criminally, but it is denied by Justice Beardsley, that

Bigler *v.* The New York Central Ins. Co.

they are liable to a civil action in such cases. But the facts of this case call for no opinion on that question. I think the order of the special term should be affirmed.

Order affirmed.

[NIAGARA GENERAL TERM, September 3, 1855. *Bowen, Mullett* and *Greene,* Justices.]